Marshall, C. J.
 

 This cause involves an interpretation and application of Section 286 of the
 
 *366
 
 General Code. The statutes relating to the bureau of inspection and supervision of public offices are contained in Sections 274 to 291, General Code, both inclusive. Section 286 provides that the result of an.examination must be set forth in a report, and, if the report relates to expenditures from the state treasury, one copy shall be filed with the Attorney General. If it relates to expenditures from the treasury of a city, or city school district, a copy shall be filed with the city solicitor of such city. Other provisions are made concerning reports of expenditures for other subdivisions of the government. It is further provided:
 

 “If the report sets forth that any public money has been illegally expended, # * * the officer receiving such certified copy * * * may, within ninety days after the receipt of such certified copy of such report, institute or cause to be instituted, and each of said officers is hereby authorized and required so to do, civil actions in the proper court in the name of the political subdivision or taxing district to which such public money is due or such public property belongs, for the recovery of the same and shall prosecute, or cause to be prosecuted the same to final determination. • # #
 

 “Each prosecuting attorney, city solicitor, or legal counsel employed by a mayor of a village shall forthwith notify the Attorney General of the .filing of such actions and keep him fully advised of the progress thereof; and the Attorney General or his assistant may appear in any such action on behalf of the particular political subdivision or taxing district and may, either in conjunc
 
 *367
 
 tion with, or independent of such prosecuting attorney, city solicitor or legal counsel employed by a mayor, prosecute the same to final determination; and the attorney general may, when in his judgment it is proper or there is good reason for so doing, if requested so to do by the auditor of state, bring the action in all cases where the prosecuting attorney, city solicitor or mayor fails or neglects to do so within ninety days after á report of an examination has been so filed. * * *
 

 “No judgment or final order shall be entered in any civil action commenced under the authority or direction of this section until such entry shall have been submitted to the Attorney General, and the Attorney General is hereby constituted an attorney of record in each such action.”
 

 Inasmuch as the Attorney General was in large measure ignored in the proceedings in the court of common pleas, and there was a flagrant disregard by the law director of the city of Lakewood of his duties under Section 286, it becomes important at the outset to determine the status of the Attorney General under that section, and his duty in regard to actions relating to expenditures which were not of public money from the state treasury. It is urged by the Attorney General that there is a mandatory duty devolving upon his office to participate in all such actions relating to suits to recover, whether the expenditures are from the state treasury or from political subdivisions of the state, that no case can proceed to final judgment without an entry first being submitted to him, and that, unless such entry is so submitted, the judgment is void. It is contended, on the
 
 *368
 
 other hand, that the provisions of Section 286, relating to the appearance of the Attorney General, are directory only, and that the failure to submit the. entry to the Attorney General is at most an irregularity. If the last paragraph of Section 286 stood alone, it would make a strong case of mandatory duty, and would strongly tend to the conclusion that a judgment entered without submission of the entry to the Attorney General would be a nullity. It is, however, obvious that no duty devolved upon the Attorney General to bring this action, unless the law director refused to do so; neither was the law director bound to do more than to notify the Attorney General and keep him advised of its progress. The language relating to the appearance of the Attorney General in the action is permissive, and only becomes mandatory in the event of refusal or neglect on the part of the official of the political. subdivision to do so within 90 days after filing of the report. The conclusion is therefore irresistible that, while that section imposes a mandatory obligation upon the law director to notify the Attorney General of the filing- of the action, to keep him fully advised of its progress, and to submit the entry of final judgment to the Attorney General, his failure to obey that: ■ mandate and to discharge that statutory obligation affects only the liability and the responsibility of the officer who is thus derelict in his duty. It is clear that he was derelict in several respects. He did not bring the action within. 90 days of the filing of the report. When the- suit was filed, he did not advise the Attorney General forthwith of the filing, and did not advise
 
 *369
 
 Mm until the issues had been completed. Even when admonished by the Attorney General to keep him advised, and to submit to him the entry of final judgment, as required by Section 286, General Code, he failed to regard that admonition of the Attorney General and the duty imposed upon him by the statute, and, although the case was tried, and an entry made upon the journal of the court on the 16th day of May, 1924, he did not notify the Attorney General until June 2, 1924. In the meantime he did not even take the precaution to file a motion for a new trial. After being further instructed on June 6, 1924, to prosecute error, and having been tendered the aid and assistance of the Attorney General’s office, he permitted another entry of judgment, which is now regarded as the entry of final judgment, to be filed on July 2, 1924. He did not give the Attorney General any notification after June 2, 1924, during that current term of court. The name of the Attorney General was not at any time placed upon the pleadings as counsel. We shall not occupy any space in this opinion with a discussion of the letter of June 2d, as to whether or not it was equivalent to the submission of a copy of the journal entry. It clearly was not a compliance with the statute in that respect. The director of law was not only derelict in complying with the plain provisions of Section 286, General Code, but he failed to discharge the generally recognized duty of an attorney, even though having no .instructions from a superior officer. He not only failed to protect and preserve the rights of his client by proper exceptions, but it is apparent that
 
 *370
 
 he even affirmatively waived his client’s legal rights. The opinion of the Court of Appeals entertained the same views of his conduct that we have herein-before expressed and said that it was the duty of the courts to preserve the rights of litigants, and in reversing the judgment proceeded upon the theory that the provisions of Section 286 were mandatory throughout, and that the entry of judgment without prior submission of the journal entry to the Attorney General was null and void. That court treated the case as though no final judgment had ever been entered.
 

 This court is of the opinion that the rights of the superintendent cannot be so easily disregarded. The court had jurisdiction of the cause and of the parties. The court had a right to assume from the record that the Attorney General was not participating in the action. The court further had a right to assume that the director of law of the city of Lakewood was doing his duty. There is no showing of collusion on the part of counsel for the superintendent. Upon this point the opinion of the Court of Appeals is pertinent and convincing :
 

 “It is difficult to understand an intention on the part of the director of law to protect the interests of his client, not only by what he did and did not do, but by his failure to co-operate with and obey the instructions of the Attorney General, There is nothing in the record to indicate collusion or improper conduct on the part of the defendant or his counsel, or to do otherwise than fairly represent his interests. It is indicated, however, that that side of the case had the benefit of the
 
 *371
 
 co-operation of the other side in the matters suggested.”
 

 We are of the opinion that all these things, so far as the superintendent is concerned, amounted to irregularities only, and did not render the judgment void and of no effect whatever.
 

 Section 11631, General Code, provides that the common pleas court may vacate its judgment after term “for mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order.” Inasmuch as the duty was not expressly imposed upon the clerk to transmit a copy of the entry to the Attorney General, we find no mistake, neglect, or omission on the part of the clerk. There is a disagreement between counsel in this case as to whether or not there was an irregularity.
 

 We shall not undertake to decide that question in the instant case, because the judgment was voluntarily paid by the board of education months before the Attorney General knew of the same and before the Attorney General filed any proceedings to vacate the judgment. This error proceeding being prosecuted from the overruling of a motion to vacate the judgment, the entire record is not before us, and we therefore express no opinion as to whether or not, under the provisions of Section 20 of Article II of the Constitution, Lynch was such an official that his salary could not be increased during his existing term of employment. Neither is it necessary to decide whether there was an irregularity in obtaining the judgment. It is only necessary to determine whether the judgment was a void or a voidable judgment, and whether the payment of the judgment was voluntary.
 

 
 *372
 
 It has frequently been decided that, when a judgment is paid after issuance of an execution, it is not a voluntary payment. There could, however, be no execution issued against a board of education, and the payment of the judgment in the instant case must necessarily have been voluntary. The Attorney General has cited cases upon the proposition that a judgment can be set aside even though the judgment has been paid. All of the cases cited, however, have been those where the judgment was paid after execution issued, and we have not been cited to a single case where a judgment has been set aside where the payment of the same has been voluntary. On the other hand, numerous cases have been cited in support of the proposition that, where a judgment has been voluntarily paid, and satisfied of record, the courts will not disturb the same unless the judgment is absolutely void on the ground of want of jurisdiction either of the subject-matter or of the parties. This court has never declared upon that proposition, but the following cases from other jurisdictions will be found to establish the rule:
 
 Durland Trust Co.
 
 v.
 
 Uttley,
 
 103 Neb., 461, 172 N. W., 251;
 
 W. T. Rawleigh Medical Co.
 
 v.
 
 McKinney
 
 (Mo. App.), 180 S. W., 440;
 
 Pardue
 
 v.
 
 Absher,
 
 174 N. C., 676, 94 S. E., 414;
 
 Penfold, Clay & Co.
 
 v.
 
 Singleton & Co.,
 
 36 Ga., 556.
 

 The judgment of the Court of Appeals will therefore be reversed, and the judgment of the court of common pleas will be affirmed.
 

 Judgment reversed.
 

 Allen, Kinkade and Robinson, JJ., concur.