PORT AUTHORITY FOR COLUMBIANA COUNTY ET AL., APPELLEES, *v.* RIVER SERVICES COMPANY, APPELLANT; TREASURER OF COLUMBIANA COUNTY ET AL., APPELLEES.

(No. 82-C-14—Decided December 21, 1982.)

*Mr. J. Michael Kapp,* for plaintiff-appellee Port Authority.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Harry N. Kandel,* for plaintiff-appellee Dept. of Transportation.

*Mr. Louis A. Isakoff,* for defendant-appellant River Services Co.

*Mr. David Tobin,* prosecuting attorney, for defendants-appellees county treasurer and auditor.

DONOFRIO, J. The issue herein involves the date upon which interest accrues in an eminent domain proceeding.

On April 27, 1981, appellees filed a complaint in the present action seeking to appropriate property owned by appellant, River Services Co. The matter of compensation for the appropriation was tried to a jury, pursuant to R.C. Chapter 163, on July 27 to 31, 1981.

On July 31, 1981, the jury returned a verdict for appellant in the amount of $923,700. The verdict was filed with the clerk of courts.

The court signed the judgment entry on the verdict on August 17, 1981 and it was filed with the clerk of courts and journalized that same day.

On September 2, 1981, appellees deposited the amount of the jury verdict with the clerk of courts and the court ordered said funds to be disbursed. No provision was made for the payment of interest to appellant.

On November 17, 1981, appellant filed a motion for interest on the judgment. This matter was heard by the court on December 30, 1981 on briefs and arguments of counsel.

On March 5, 1982, the court entered final judgment denying the motion for award of interest.

Appellant's sole assignment of error reads:

"The trial court erred in failing to award interest in this eminent domain proceeding when Ohio Revised Code Sec. 163.17 provides that '* * * If an award is not paid to the owner or deposited in court within twenty-one days after journalization of the verdict, interest thereafter shall accrue * * *,' and when the jury verdict was journalized on July 31, 1981 and the Port Authority did not deposit the amount of the award with the Clerk of Courts until September 2, 1981."

The crux of this case is the correct interpretation of what "journalization of the verdict" appearing in R.C. 163.17 means. R.C. 163.17 states in relevant part:

"Where the agency has no right to take possession of the property before the verdict, if the award is not paid to the owner or deposited in court within twenty-one days after journalization of

the verdict, interest thereafter shall accrue, except that where the owner appeals, interest shall not accrue until the agency takes possession."

Appellant argues that this section creates a statutory right to interest, consistent with Section 19, Article I of the Ohio Constitution, which provides that compensation shall be paid when private property is taken for the public welfare. Appellant further argues that the jury verdict was journalized when the verdict form was filed with the clerk of courts' office on July 31, 1981.

It appears from appellant's brief that the clerk of courts evidently maintains records that incorporate the jury verdict and is referred to as a "journal."

The trial court found and so stated in its journal entry:

"It is the Court's opinion that the journalization set forth refers to the Judgment Entry on the verdict which was signed by the Court on August 17, 1981. The motion for an award of interest is hereby denied."

Thus, we have the issue before us of what "journalization of the verdict" means as set forth in R.C. 163.17.

Appellant puts forth in support of its argument the case of *Athens* v. *Warthman* (1970), 25 Ohio App. 2d 91 [54 O.O.2d 123], and quotes therefrom the following language in support of its position:

"It is also evident to us that what the Legislature has created by the second paragraph of R.C. 163.17 is the additional statutory right to interest on the award commencing twenty-one days after entry irrespective of when possession is taken by the agency, subject, however, to the limitations otherwise provided in the section." *Id.* at 94-95.

However, the above wording in *Warthman* does not clearly state the appellant's position in the above-quoted language where the court referred to "entry." Traditionally, entries in journals are those of the court. Furthermore,

*Warthman* does not clearly explain the meaning of "journalization" as set forth in R.C. 163.17 and one can find in the opinion other statements by the court that can be construed to support the position of the appellees. For example, at page 96, the court stated:

"* * * The owner, by virtue of R.C. 163.15, having lost title to his property upon journalization of the final entry and retaining only the right to possession until deposit is made, is to receive monetary compensation in the form of interest for the loss of the other attributes of ownership until a deposit is made."

We note that therein the court referred to journalization of the final entry.

Before R.C. 2323.15 was repealed it provided that when a trial by jury has been had and a verdict rendered a journal entry of judgment in conformity to the verdict shall be approved by the court in writing and filed with the clerk for journalization.

Since the repeal of this section of the code, Civ. R. 58 provides for the court's duty in relationship to a jury verdict and as stated in 32 Ohio Jurisprudence 2d 277, Judgments, Section 73, "[i]t is prescribed in the Ohio Civil Rules that a judgment is effective only when filed with the clerk for journalization." This statement is based upon Civ. R. 58 which provides as follows:

"Subject to the provisions of Rule 54(B), *upon a general verdict of a jury,* or upon a decision announced, *the court shall promptly cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it. A judgment is effective only when filed with the clerk for journalization.* Entry of the judgment shall not be delayed for the taxing of costs." (Emphasis added.)

In this case, the court, pursuant to Civ. R. 58, caused the judgment to be prepared, secured the signatures of all the parties, and itself signed it on August 17. The clerk on the same day entered it in the clerk's journal.

On the other hand, we cannot find any authority, statutory or by rule, that orders the clerk of courts to journalize a jury verdict without having it finalized as a judgment entry by the trial court and then entered into a journal. It may well be that the clerk of courts' office maintains books that are referred to as "journals" for the maintaining of court papers, documents or records such as a verdict, but logic would dictate that the statutory terminology in R.C. 163.17 does not envision the handling of the verdict form in such a fashion as being journalized. Although appellant argues that it in effect protects the interest of the property owner by triggering the time for interest to run, there is no guarantee that the verdict form will find its way to the clerk's office immediately and the delay could be just as long as the delay in the entering of a final judgment entry by the court, if not longer. The traditional concept that a court speaks through its journal entries lends further weight to the trial court's conclusion. In 32 Ohio Jurisprudence 2d 34, Judges, Section 21, the text states:

"Control Over Journals. — Judges have always been given complete control over the journals of their courts, with full power in the exercise of a sound discretion to make them speak the deliberate and settled intention of the judge. This control extends not only to determining what shall be entered on the journal in the first place, but also, during the term of court, to modifying or vacating entries already made."

Furthermore, as stated before, there is no specific authority giving the clerk of courts power to journalize a jury verdict without the trial court's judgment entry on the jury verdict.

R.C. 2303.12 directs the books to be kept by the clerk, as follows:

"The clerk of the court of common pleas shall keep at least four books. They shall be called the appearance docket, trial docket and printed duplicates of the trial docket for the use of the court and the officers thereof, journal, and execution docket. * * *"

The reference to journal, by necessity, implies the court's journal.

In 14 Ohio Jurisprudence 2d 475-476, Courts, Section 56, the powers and duties of the clerk of courts is explained:

"In accordance with the general view that a clerk of court is the ministerial officer of the court, clerks of courts in Ohio are charged with duties of an administrative and political nature, as distinguished from the exercise of judicial functions by the courts. Judicial functions cannot be exercised by the clerk, since it would be in violation of the constitutional provisions vesting the judicial powers of the state in the courts of the state. Clerks of court are vested with no judicial discretion in any respect, and the same is true, of courts, as to a deputy clerk."

We, therefore, hold that the terminology in R.C. 163.17, "after journalization of the verdict," means that the trial court has rendered judgment upon the jury verdict in a journal entry signed by the court and thereupon filed with the clerk for journalization as directed by Civ. R. 58. For the foregoing reasons we overrule appellant's assignment of error and accordingly affirm the judgment of the trial court.

*Judgment affirmed.*

LYNCH, P.J., concurs.

O'NEILL, J., concurs in part and dissents in part.

O'NEILL, J., concurring in part and dissenting in part. I concur in the majority opinion. However, it is my opinion that the disposition should be different. When a jury verdict is received, it should not be held. Civ. R. 58 clearly provides that "* * * upon a general verdict of a jury * * *, the court shall *promptly* cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon

enter it. * * *'' (Emphasis added.) A delay from July 31, 1981 until August 17, 1981 does not fall within the definition of "promptly." Apparently, by docket entry, the trial judge ordered the judgment entry prepared on July 31, 1981, in pertinent part, as follows:

"* * * and the Court discharged the jury, and ordered the Verdict received and filed."

Why a formal judgment entry was not filed timely is not explained. Regardless, it should have been.

It is my opinion that this case should be remanded to the trial court with instructions that the court enter that judgment entry, which was filed on August 17, 1981, nunc pro tunc as of July 31, 1981.

In the alternative and, in the absence of a record, the matter should be remanded for an evidentiary hearing so that a determination could be made as to why the entry was not timely filed. I mention this, only because there are instances where the trial judge orders the prevailing party to prepare the entry.